## The Port Huron & Northwestern Railway Co. v. Michael Callanan.

[See 61 Mich. 12, 15.]

*Arbitration proceedings—Award—Equity has power to relieve against for fraud and misconduct in arbitrators—Does so only in special cases—Great objections to any general interference with.*

1. There is *power* in a court of equity to relieve against awards in some cases where there has been fraud and misconduct in the arbitrators, or they have acted under manifest mistake; but there are great *objections* to any general interference with such awards. They are made by a tribunal selected by the parties, and expected to act on its own view of law and testimony more freely and less technically than courts and regular *juries;* and to frame its decisions on broad views of justice, which may sometimes deviate from the strict rules of law. It is not expected that either party may repudiate the action of the arbitrators and fall back on the court; and if equity interferes in such cases, it is for the reason that such tribunal has not really acted within the lines of the duty laid upon it, and has not *in fact* carried out the *agreement* under which it has obtained *authority* to proceed.

2. Upon a review of the testimony in the case. the Court was unable to find in the record any ground for filing the bill, and in affirming

the decree below awarded the defendant fifty dollars damages, in addition to the usual costs of affirmance.

Appeal from St. Clair.   (Stevens, J.)   Argued October 7, 1887.   Decided October 20, 1887.

Bill filed to set aside an award.   Complainant appeals from a decree dismissing bill.   Affirmed.   The facts are stated in the opinion.

*Atkinson & Vance,* for complainant:

Relief against an award will be granted in equity if a plain error in law or fact is specifically set forth and proved: Russell on Arbitration, 3d Ed. 293; Morse on Arbitration, 321; Hilliard, Inj. 604; *Hahn v. Hart,* 12 B. Mon. 426; and an award will be set aside for a mistake palpable upon its face, or for a mistake in facts such as the arbitrator himself will admit, a miscalculation, or for a palpable mistake extremely prejudicial to the losing party: Morse on Arbitration and Award, 321, and cases cited; *Spruck v. Crook,* 19 Ill. 425; and a court of chancery may correct a palpable mistake or miscalculation made by the arbitrators.

Arbitrators may be examined as witnesses to show that there was a mistake in the award: *Spruck v. Crook,* 19 Ill. 425–428.

" When a judgment is obtained by oppression, wrong, and hard conscience, the chancellor will frustrate it and set it aside, not for error or defect, but for hard conscience of the party:" Hilliard on New Trials, 589; and the general rule is that equity will grant relief against a judgment which is against conscience, or the justice of which can be impeached by facts, or from accident or mistake: Hilliard, 589, and cases cited.

*Surprise* is always a ground in equity for new trials: *Phelps v. Peabody,* 7 Cal. 50; *Rice v. R. R. Bank,* 7 Humph. 39; *Wright v. Eaton,* 7 Wis. 595; *Moore v. Gamble,* 1 Stock. 246; *Bradley v. Richardson,* 23 Vt. 720.

The court of equity acts upon the party, not upon the judgment, and orders that unless he consent to a new trial he shall be perpetually enjoined: Hilliard on New Trials, 588, 592; *Pelham v. Moreland,* 6 Eng. 443; *Floyd v. Jayne,* 6 Johns. Ch. 479.

Erroneous statements of witnesses are causes for new trials: Hilliard on New Trials, 591.

Excess in amount of the judgment will be cause for injunc-

tion or new trial, if caused by mistake: Hilliard on New Trials, 593; *Williamson v. Johnson*, 1 Halst. Ch. 537; *Montgomery & N. v. Griffin*, Walker's (Miss.) Report, 457; *Greathouse v. Hord*, 1 Dana (Ky.) marg. p. 105. If an injunction is refused and debt paid, it may be decreed back: Hilliard on New Trials, 593; and if after-discovered evidence shows a mistake in calculation of jury, a new trial will be granted: 1 High, Inj. § 115; *Rust v. Ware*, 6 Grattan, 50; *N. Y. & H. R. R. v. Haws*, 56 N. Y. 175.

A motion for new trial need not be made before a bill is filed: *N. Y. & H. R. R. v. Haws*, 56 N. Y. 175; because such motions are addressed to the discretion of the court, and complainant should not be compelled to depend upon that action: *N. Y. & H. R. R. v. Haws*, 56 N. Y. 180.

*A. E. Chadwick* and *Wm. M. Cline*, for defendant:

After a verdict at law it is too late to apply to equity, and before equity will interfere there must be a clear case of accident, fraud, or surprise, which must be without fault on the part of the complainant: *Brown v. Swann*, 10 Peters, 497, 498; or in case a judgment has been obtained by fraud or deception, and the party has lost, without fault on his part, his remedy of applying to the court to set it aside, equity will afford him relief: *Graham v. Boston H. Ry. Co.*, 14 Fed. Rep. 753.

Equity will only interfere to grant new trials in actions at law when the judgment recovered is against conscience, and the applicant had no opportunity to make defense, or was prevented from so doing by accident, or by the fraud or improper conduct of the opposite party, and without fault on his own part; and will never interfere where a party under no disability has neglected to make his defense at law: *Miller v. Morse*, 23 Mich. 365; *Mack v. Doty*, Har. Ch. 366; *Burpee v. Smith*, Walk. Ch. 327.

To show that the judgment is groundless or unjust, or that the party has a good defense which was not interposed, is not enough to induce equity to interfere. It must show also a satisfactory reason why it has not been available: *Creath's Adminr. v. Sims*, 5 How. 192; *N. Y. Life Ins. Co. v. Bangs*, 103 U. S. 780.

CAMPBELL, C. J. The bill in this case was filed to set aside an award of compensation for lands over which complainant laid its track. Defendant owned a parcel of land

at the corner of a street running east and west, in the plat of
Fort Gratiot, which lies above Port Huron, and of another
street running north and south, which is the one used for
the railway.    Proceedings had been taken to condemn the
land, which were set aside as illegal, and other litigation had
arisen and was pending.    On the eighteenth day of May,
1886, a jury had been impaneled in an action for damages
brought by defendant against complainant, and the trial was
pending, when an arrangement was made to end the whole
controversy by the arbitration of the twelve persons who had
been so impaneled.    This was made by articles executed,
not only by the parties to the suit, but also by Mary Calla-
nan, defendant's wife, who was regarded as a proper party
because the land was occupied as the family homestead.    By
this document the following was agreed upon :

"The twelve jurors shall proceed to an inspection of the
premises, and shall ascertain what the title or claim of Michael
Callanan is to the property occupied by the said Port Huron
& Northwestern Railway Company on Twelfth street and
Superior street, adjoining lot 37, above mentioned ; and after
having so ascertained shall estimate its value, and all dam-
ages to which the said Michael Callanan may be entitled as
against the said company, and shall state in their award the
amount thereof, taking into consideration $75 already paid
by said company to said Callanan, and deducting the same
from such sum so found by them."

Provision was then made for a conveyance by Callanan.
The document then proceeds :

"The said jury shall report to this court their award, with-
out further proofs, upon their own view of the premises,
and that award shall be treated as a verdict, and final judg-
ment to be entered therein, without costs to either party.    In
case the jury are unable to agree, a majority verdict shall
stand as the verdict of the jury."

This jury, after viewing the ground, brought in an award
of four hundred and seventy-five dollars, leaving four hun-
dred dollars payable after deducting the former payment of
seventy-five dollars.

This bill is filed to impeach and set aside this determina-

tion. The grounds set up are, in brief, that Callanan got representations before the jury which were false, to the effect that Mr. Atkinson, the complainant's solicitor in this case, had received seven hundred and fifty dollars damages for a parcel of the same size as Callanan's, and by further representing that Callanan's lot included all the land inclosed in the same fence, whereas he only owned half of that land. It is also set up that the damages are grossly excessive.

There is power in a court of equity to relieve against awards in some cases where there has been fraud and misconduct in the arbitrators, or they have acted under manifest mistake, and perhaps in some defined and undefined cases. But it is evident that there are great objections to any general interference by courts with awards. They are made by a tribunal of the parties' own selection, who are, usually at least, expected to act on their own view of law and testimony more freely and less technically than courts and regular juries. They are also generally expected to frame their decisions on broad views of justice, which may sometimes deviate from the strict rules of law. It is not expected that after resorting to such private tribunals either party may repudiate their action and fall back on the courts. And equity, on whatever pretext it may intervene in such cases, does so upon the reason that the tribunal has not really acted within the lines of the duty laid upon it, and has not in fact carried out the agreement under which it has obtained authority to proceed.

Without going into theoretical questions, we must look at this case upon the facts. There is a good deal of rather vague and some direct testimony tending to show that untrue rumors reached some of the jurors of the sum received by Mr. Atkinson, and that some of the jurors misapprehended the dimensions of defendant's land. There is also varying testimony concerning its value.

But when the record is closely scanned there is nothing which leads us to suppose that a majority of the jurors acted on any such rumors, or knew of them, and there is nothing whatever to indicate fraud or wrong in them. The parties

were both represented on the ground, and there was every facility for ascertaining the identity of the land. There appears to have been no discussion among the jurors based on any false assumption upon any subject, and there is nothing indicating tampering or fraud by defendant. On the contrary, in our opinion, the jury had full means of knowing what they were to appraise, and there is nothing which leads us to believe that a majority, at least, failed to act upon their own judgment. It is not within our province, to determine the value of the land or the damage done to it by the railway, and we cannot review the amount of the award deliberately made, merely for excess; but there is testimony indicating that a front of two hundred feet is damaged, if not made ineligible for frontage on what was meant to be a street; and whether a diminution in value of something more than two dollars a foot front really exists, the record certainly does not demonstrate that it is beyond reason and outrageous to find it. By the terms of the submission, the arbitrators were to act upon their own view, without further proofs, and there is no proof whatever indicating that a majority did not so form an opinion fairly, and are not entirely satisfied with it. Under the submission a majority could act. In fact the verdict was unanimous.

The bill itself is deficient in tangible allegations. The testimony is still more unsatisfactory. After a full and ingenious argument, we are unable to find in the record any ground for filing such a bill against this award.

The case is peculiar, because the submission was made when apparently the same jury could not have failed to find some amount of damages for the invasion of defendant's rights, and when litigation had been considerable and, of course, expensive. The inevitable consequence of such a litigation as this must be to cause a greater expense on both sides than any possible difference in damages would probably create. If not warranted by a clear showing of abuse and unfairness, it is practically oppressive, and we think it open to that charge as claimed by defendant's counsel on the argument. As the court below, after a hearing, dismissed

the bill, and we can find no good reasons for appealing, we think something should be awarded to prevent the defendant from losing too large a share of the damages granted him, and we allow fifty dollars, in addition to the ordinary costs of affirmance.

The decree will be affirmed accordingly.

The other Justices concurred.