OLIVE GROHE, Appellant, v. STANLEY JACKSON, Appellee.

**TRIAL:** Direction of Verdict—Overcoming Prima-Facie Case. A jury question on the issue of defendant's negligence *ordinarily* survives any amount of counter evidence by the defendant.

*Appeal from Clinton District Court.*—A. P. BARKER, Judge.

APRIL 3, 1923.

ACTION to recover damages for personal injury sustained by plaintiff. Facts appear in the opinion.—*Reversed and remanded*.

*Skinner & Petersen Law Company*, for appellant.

*Wolfe, Wolfe & Claussen*, for appellee.

ARTHUR, J.—The injury complained of was sustained by appellant at the intersection of Main and Sixth Streets in

Lyons, a part of the city of Clinton, Iowa. Main Street extends east and west; Sixth Street, north and south. These streets cross at right angles. Plaintiff alleged that, about 4 o'clock in the afternoon of December 18, 1920, she was walking on the west side of Sixth Street, going north, crossing Main Street, following the west line of Sixth Street; that, when within a few feet of the sidewalk on the north side of Main Street, at the intersection of Sixth Street, she was struck by an automobile, operated by defendant, who was driving toward the west; that a truck was being driven west in front of defendant's automobile, and she passed said truck, and that defendant, driving his automobile, passed around the truck on the right or north side of the truck, and struck her; that the truck had stopped, to allow her to pass in front of it; that defendant gave no warning of his approach.

In answer to the petition, defendant admitted that plaintiff was walking on the street and at the place she claimed, and admitted that he was driving an automobile on the intersection of Main and Sixth Streets, and denied other allegations of the petition.

On the issues thus made, trial of the case proceeded. At the close of all the evidence, defendant moved for a directed verdict, on the following grounds:

(1) Giving to all of the evidence the greatest probative force it will bear in plaintiff's favor, there is no evidence that will warrant the jury in finding a verdict for the plaintiff, and, if the jury should find for the plaintiff, the court would, as a matter of law, have to set the verdict aside. (2) Plaintiff failed to prove any negligence on the part of defendant. (3) Giving to the evidence all the weight that it will bear in plaintiff's favor, it shows that plaintiff was guilty of contributory negligence.

Defendant's motion was sustained, and, by direction of the court, verdict was returned for defendant. From such ruling and judgment, this appeal is taken. The error claimed by appellant is the directed verdict.

We must necessarily set forth the evidence, to present the question involved. Plaintiff, who was the only witness in her behalf, testified, in substance, that the accident happened when

she was crossing Main Street; that she was walking from the intersection of the west line of Sixth Street with the south line of Main Street, north to the north line of Main Street, on the west line of Sixth Street, on her way to a store located at the intersection of the west line of Sixth Street and the north line of Main Street; that she did not see any cars when she started to cross the street; that she had gone part way across Main Street when she saw a truck coming from the east, and she stepped toward the sidewalk; that she did not see defendant's automobile back of the truck; that it came around on the right side of the truck, between the sidewalk and the truck, and the fender of the automobile struck her and threw her about six feet toward the west; that she was nearly over Main Street when she saw the truck coming from the east, going west; that she saw no truck but the one going west; that she saw no truck moving from the west toward the east; that, when she first saw the truck, it was just about to the crossing in the middle of Main Street, and she was nearly over Main Street; that the truck stopped, out in the middle of Main Street, and she supposed it stopped because the driver saw her; that the truck did not stop near the curb; that there was room for defendant's automobile to pass between the truck and the curb; that she stepped to the north, after the truck had stopped and was standing; that the automobile was going in the same direction as the truck, right behind the truck, and that she did not see the automobile until it hit her; that the truck had stopped to let her go by; that she walked on to the north, and did not have time, after she saw the truck, to look for another car, before defendant's car struck her.

Plaintiff testified to her injuries, and two doctors who examined her testified to the injuries. It appears without dispute that plaintiff received severe injuries; that there was an impacted fracture of the left femur; and that the injured part was never restored to perfect condition.

Defendant, in his own behalf, testified, in substance, that he was driving his car north on Sixth Street, and when he got to the intersection of Sixth and Main Streets, he turned to the west; that, when he turned, he was moving not over three or four miles an hour; that, after he made the intersection turn,

he proceeded west on Main Street; that he saw plaintiff, as he was making the turn, and after he made the turn around the post at the intersection; that, after he made the turn, there was no automobile or truck on the street, except some automobiles that were parked along the curb on the west side of Sixth Street, and a truck moving from the west toward the east on Main Street, ahead of him; that there was no truck moving in the direction that he was driving; that there was no truck going west; that, after he made the turn at the center of the intersection, he saw plaintiff, and stopped his car; that, as he stopped, she kept right on, coming right up to his car; that she was not looking at his car; that she was watching a truck that was coming east on Main Street, and she kept on going, and saw the truck that was coming from the west, and it excited her, and she started to get out of the way, and fell; that the only truck there was there was moving in the opposite direction from the way he was moving,—that is, it was coming from the west, and he was going west; that the truck was on the south side, and he was on the north side of Main Street; that he did not know as he could describe how appellant got past the truck; that he was not watching her at that time; that, when he first saw appellant, she was moving fast, to get out of the way of a truck that was coming from the west on the south side of Main Street.

A. Studemann, called by defendant, testified that he was crossing Sixth Street from a banking house located at the northeast corner of Sixth and Main Streets, over to a store located at the northwest corner of Sixth and Main Streets; that, when he first saw plaintiff, she was just leaving the sidewalk at the southwest corner of Sixth and Main Streets; that, when he was going across the' street, he saw defendant's car turn the flag post at the middle of the intersection of Sixth and Main Streets, going about as slowly as it could move along; that, as he saw defendant turn around the post in the intersection, plaintiff was walking north across Main Street, traveling a little bit west of the west line of Sixth Street; that, at the same time, he noticed a truck coming from the west toward the east; that plaintiff was hurrying a little, to get out of the way of the truck, and was watching the truck, and then she just about turned around, made a quick turn, slipped, and fell; that de-

fendant's automobile had turned the corner, going west, and he saw him stop; that he was back of defendant's automobile when he saw defendant stop; that, after defendant's automobile had stopped, he saw plaintiff's head above the radiator, and then she went down, about three or four feet west of defendant's automobile; that there was no truck going west immediately ahead of defendant's car; that he did not see defendant go around any truck.

George Otterbach, a policeman called by defendant, testified that, at the time in question, he was at the southeast corner of Sixth and Main Streets; that he watched plaintiff crossing Main Street, on the west side of Sixth Street, going north; that she started across the street, walking about on the west line of Sixth Street, but that she veered to the west, in dodging cars; that he first saw defendant coming from the south on Sixth Street, and that he turned to the west around the traffic post at the center intersection of Sixth and Main Streets; that, about the time defendant turned the traffic post, plaintiff was trying to get out of the way of a truck that was traveling from the west toward the east, and that she got clear around, in doing so; that the truck coming from the west and defendant's car moving to the west were in front of him; that he saw plaintiff fall; that, when defendant turned the intersection, he was barely moving; that, from where witness was, it looked as though defendant's car was standing still, before plaintiff hit the car, and that she backed and hit the car, and faced toward the west; that, where plaintiff fell, she was 10 or 12 feet west of the west line of Sixth Street; that there was no truck ahead of defendant's car, going in the direction that he was. This witness also testified that, when he saw plaintiff fall, he went out to help her up; that "the car that hit her was, perhaps,— I will say I do not think she was but three or four feet away from the car. I said to somebody, as I went into the store, 'Find out who this fellow is, and tell him to come in here;' that he followed us in. I did not know he was the man then, but I said to these people to be sure to find out who this man was. I wanted to find out for Mrs. Grohe, and he turned around, and said, 'I am the man that hit her.' "

F. J. Cooley, called by defendant, testified that, at the

time plaintiff sustained her injury, he was at the northwest corner of Main and Sixth Streets, going over to the Hagge store; that he saw plaintiff fall; that defendant's car was standing still at the time she fell.

As to the charge of negligence that appellee turned to the right, in passing the truck, appellee calls attention to the testimony that there was but one truck present at the scene of the accident, and that that truck was going east, and not west, as claimed by appellant; and also to the testimony that appellant was not struck at all by appellee's automobile. It is true that the witnesses for appellee all testified that there was but one truck present, and that it was going east, and that appellant alone testified that the truck was going west. It is also true that appellee's witnesses testified that appellee's car was standing still at the time appellant fell. Witness Otterbach testified that appellant "backed and hit the car." Witness Cowley testified that "the car was standing still at the time she fell." Appellee seeks to uphold the order of the court directing the verdict, by the doctrine announced in *McGlade v. City of Waterloo*, 178 Iowa 11. In this case, we said:

"We have repudiated the scintilla doctrine, and announced the rule that a trial judge should sustain a motion to direct whenever, considering all of the testimony, it clearly appears to him that it would be his duty to set aside a verdict if found in favor of the party upon whom the burden of proof rests. * * * Of course, this rule must not be so applied as to deprive the jury of its function to ascertain the facts, upon a fair dispute in the testimony, and the doctrine now generally applied is that if, at the conclusion of plaintiff's testimony, there is enough to take the case to a jury, a defendant cannot, after introducing his evidence, claim that there is nothing for a jury to determine. * * * But there are some exceptions to this rule. For example, if the testimony offered by the party having the burden, is in conflict with undisputed facts, and especially with physical facts which are a verity, or is such that, under all the circumstances, it cannot, in the nature of things, be true, or is such as that it is entirely and wholly inconsistent with any other theory than that the witnesses must have been mistaken, the

trial court is justified in directing, and it is its duty to direct, a verdict for the other party.''

Counsel for appellee, as we understand them, contend that the instant case calls for the exception to the rule announced in the *McGlade* case, and that the court did not err in directing the verdict. We are inclined to think that the case does not fall within the exception, but comes within the general rule announced in the *McGlade* case, that:

''If, at the conclusion of plaintiff's testimony, there is enough to take the case to a jury, a defendant cannot, after introducing his evidence, claim that there is nothing for a jury to determine.''

In the instant case, there can be no question that, at the close of plaintiff's testimony, she had made out a case to go to the jury. At that point, a motion to direct a verdict in favor of defendant could not rightfully have been sustained.

Now, when the evidence of defendant was in, was a physical fact situation shown, notwithstanding plaintiff's evidence, to warrant the directed verdict? We think not. There was direct and irreconcilable conflict in the testimony introduced by the parties. If the case had been submitted, and the jury had believed the testimony of appellant that there was a truck traveling from the east to the west, and that it stopped, to allow her to pass in front of it, and that appellee, traveling in the same direction as the truck, passed around the truck to the right, and struck the plaintiff, and had not believed the testimony of witnesses for appellee, or had thought the witnesses for appellee were mistaken, the jury would have been justified in finding for appellant. Appellant produced more than a ''scintilla'' of evidence to sustain her case. If the case had been tried to the court, and the court had found that the preponderating weight of the evidence was in favor of the defendant, that there was no truck moving from the east to the west, and that appellee passed around no truck, and that the only truck on the scene was one approaching from the west, and that appellee did not strike appellant with his car at all, and that appellant slipped and fell, without being struck by anything, such findings would not be disturbed. But it is not within the province of the court to weigh the evidence. That is peculiarly for the jury. In

directing a verdict, the strongest probative force must be given to the evidence of the party against whom the verdict is directed.

We think appellant made out a case which entitled her to have it passed upon by the jury, and that it was error to direct a verdict. Results in reversal and remand of the case.—*Reversed and remanded.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.