FIRST SAVINGS BANK OF CRAWFORDSVILLE, Appellant, v. W. J. EDGAR, Appellee.

**BILLS AND NOTES: Fraud—Waiver by Accepting Indemnifying Con-
1  tract.** The maker of promissory notes for the purchase price of lands waives all fraud in their inception when, with full knowledge of such fraud, and that his notes had been wrongfully negotiated, he accepts, in *sole* reliance on the contract of a third party to hold him harmless, a substitution of other lands in lieu of the lands first contracted for.

**APPEAL AND ERROR: Directing Judgment in Lower Court.** When
2  all questions of law and fact are, on plaintiff's appeal, fully settled in favor of plaintiff's recovery, a reversal will be entered, with or-ders to the lower court to enter judgment.

**Headnote 1:** 39 Cyc. p. 1293.  **Headnote 2:** 4 C. J. p. 1185.

*Appeal from Washington District Court.*—H. F. WAGNER, Judge.

SEPTEMBER 26, 1924.

REHEARING DENIED APRIL 8, 1925.

ACTION to recover upon two promissory notes. There was a trial to a jury, and a verdict for the defendant. From a judg-ment thereon, the plaintiff appeals.—*Reversed and remanded.*

*Livingston & Eicher,* for appellant.

*R. P. Howell* and *Morrison & Morrison,* for appellee.

VERMILION, J.—The plaintiff sues to recover on two promis-sory notes given by the defendant. It appears without dispute

that, on October 17, 1918, the defendant entered into a written

contract with the Daniel Hayes Company for
the purchase of 40 acres of land in California,
and executed his note to the company for the
purchase price. On the following day, this note
was purchased by the plaintiff bank; and thereafter the two
notes in suit, payable to the bank, were executed by the defendant, in lieu of the note originally given. The contract for
the purchase of the land provided that, if, upon inspecting the
property purchased within 90 days, the defendant was not satisfied with the tract, he had an option to select any unsold lot of
equal acreage and price controlled by the company, or might,
within seven days after completing the inspection, notify the
company in writing, at its office in Chicago, that he was not satisfied with his purchase, and desired to have his money back;
and the company would, within 90 days, return to him all money
or notes paid. Within the time allowed him by the contract,
the defendant went to California and inspected the land described in his contract. He was not satisfied with it, and was
shown another tract. He objected to this tract also. He saw
rock upon it, and inquired about hard pan, and testified that
he was told by agents of the company that the rock did not hurt
the land, and that there was no hard pan upon it. He was still
not satisfied with the tract, and, as to what then transpired, he
pleads that one Lalor, the agent who had sold him the original
tract, falsely represented that he personally was worth a quarter
of a million dollars, and that, if defendant would agree to a
change in the original contract of purchase by the substitution
of the description of the last tract shown him, Lalor would guarantee in writing to sell the same for $200 per acre and interest,
if the defendant became dissatisfied with it. The contract in
fact entered into between defendant and Lalor at that time is
as follows:

1. BILLS AND
NOTES: fraud:
waiver by accepting indemnifying contract.

"Chowchilla, California,

"It is agreed by Mr. W. J. Edgar and S. P. Lalor that at
the end of the one year if Mr. W. J. Edgar is not satisfied with
the land purchased by him in the Chowchilla District that S.
P. Lalor agrees to buy said forty acres for the sum of $200.00
per acre plus 6 per cent, and said Lalor agrees upon the pur-

chase of said land to pay said Edgar the money invested by Edgar in the improvement of the land plus 6 per cent interest should Edgar be willing to sell at that time.

"[Signed]    W. J. Edgar.
"S. P. Lalor,
"Gerald Hayes."

The original contract of purchase was then changed by substituting the description of the latter tract for that originally described therein.

The plaintiff claims to have been a holder of the original note in due course, and claims further, among other things, that, by accepting the tract of land the description of which was inserted in the contract in lieu of that originally purchased, with knowledge of the fraud practiced upon him in the original sale, and entering into the contract with Lalor, defendant waived any defense he had against the notes in suit. The defendant denies that plaintiff was a holder in due course of the original note; alleges that he was induced to purchase the land originally described in the contract and to give the original note by false and fraudulent representations on the part of agents of the company as to the character and productiveness of the land and the financial responsibility of the Daniel Hayes Company and its operations, and executed the notes in suit upon the assurance of the cashier of the plaintiff bank that to do so would not affect his rights; and alleges that his acceptance of the contract describing the substituted land was procured by fraudulent representations as to its quality, to the effect that it was equal to the best tracts defendant had been shown which were under cultivation, and that there was no hard pan in that part of California, and by a fraudulent concealment of the fact that there was hard pan underlying the tract in question.

Various other issues were raised by the pleadings, but it is unnecessary to set them out. The case has been once before in this court, and a judgment for the defendant was then reversed. 193 Iowa 1150. Upon a retrial there was again a verdict and judgment for the defendant, and plaintiff appeals. Many errors are assigned that we do not find it necessary to consider, in the view we take of the case.

By a motion for a directed verdict in favor of the plaintiff,

made at the close of all the evidence, and a motion for judgment in favor of plaintiff notwithstanding the verdict, the question is presented that, by accepting the contract of purchase as changed, and the contract of Lalor to purchase the land at the end of a year, if defendant was dissatisfied with it, with full knowledge of the fraud that had been practiced upon him in the original sale, the defendant waived any defense he might have had on that account against the notes sued on.

The ultimate question upon the trial, the one upon which the defense of fraud in the inception of the original note finally depended, was one of waiver. Upon this question the jury was instructed that, if the contract with Lalor was entered into before the original contract of purchase containing the description of the substituted land was approved by the defendant, and was the sole inducement for the defendant's acceptance of the contract describing the substituted land, then the defendant could not assert the defense of fraud against either the original note or the notes in suit. The correctness of the rule of law so announced is not questioned. The defendant relies upon the proposition that a waiver of previous frauds cannot be predicated on acts induced by other and later frauds. This was the view taken by the trial court and the rule given to the jury. This being conceded to be correct, the question arises whether there is any evidence to support a finding that the defendant relied upon alleged fraudulent representations as to the character of the land substituted for that originally described in the contract of purchase, in accepting that contract as changed. This must be determined from the testimony of the defendant himself and the circumstances established by the uncontroverted evidence.

It is undisputed that, before he accepted the contract for the second tract, the defendant knew that his note had been negotiated to the bank before he had had an opportunity to inspect the land, and in violation of the agreement of Lalor, made at the time it was taken, that it and the contract would be left at the bank for safe-keeping until the inspection had been made. He had given the notes in suit direct to the bank, in place of the note so negotiated. He knew that the land he had contracted for had been misrepresented to him, and he had refused to take it. He had learned that the representations as

to the farming operations of the Daniel Hayes Company were not true. He had inspected the tract that was later substituted in his contract, where a crop of barley or wheat was growing at the time, and had opportunity to compare it with other land in the locality under cultivation; and this inspection was after the alleged fraudulent representations had been made to him as to its quality, as compared with other tracts. It had been represented to him that there was no hard pan in that section. He did not, under the influence of these representations, accept the substitution, and only accepted it when Lalor executed the written contract above set out, agreeing to buy the land at the end of a year and pay defendant everything he would have in it, if he was then dissatisfied.

The defendant at that time had a right, under his contract of purchase, to refuse to accept the land described in his contract, or any other, and to demand the return of his note. This he did not do, but accepted other land, upon the contract of Lalor to buy it, if at the end of a year he was dissatisfied. Upon the former trial, the fraud relied upon as an inducement for defendant to enter into the contract with Lalor was the alleged false representation that the latter was worth a quarter of a million dollars. As to the falsity of this statement, there was then no competent proof. We find in the present record no attempt to show the falsity of this statement. The defendant has changed his position entirely, and now claims that, in agreeing to the substitution, he relied, not on that representation, but on alleged misrepresentations as to the quality and character of the substituted tract. As to the alleged representation that the land was as good as any in the locality, he had ample opportunity to judge for himself. As to the presence of hard pan under the surface, and, indeed, as to any other matter that might render him dissatisfied with his bargain, he protected himself by his contract with Lalor, and is in no position, we think, to rely upon such alleged misrepresentations to defeat the notes he had previously given to the plaintiff bank. If it be conceded that the bank was not a holder of the original note in due course, and that it induced the giving of the notes sued on by representing that to so do would not affect the plaintiff's rights, the utmost it could be chargeable with was knowledge of what had tran-

spired, and that plaintiff had a right, on inspection, to rescind
the contract or select the other land. When he assumed, upon
discovery of the fraud practiced upon him, to accept other land
upon a contract with Lalor of which the bank had no knowledge,
and which fully protected him in any event, he waived the right
to rely upon any defense he then had to the original note on the
ground of fraud. He secured and accepted a contract protecting
him against the very fraud on which he now relies to defeat
notes given directly to the bank.

We do not overlook the fact that defendant testified upon
the last trial that he did rely upon the representations as to the
quality of the substituted tract, as well as upon the contract with
Lalor, in accepting the substitution, and are not unmindful of
the established rule that it is not necessary that fraud be the
only or sole inducement to a contract, to avoid it on that ground.
It is insisted in this connection that this was a question of fact
for the jury to determine on the evidence. This is, of course,
the general rule. The defendant, on the first trial, testified that
the Lalor contract was the one thing he had to have before he
approved of the contract of purchase as changed, and that he
would not have done so unless he got it; and on the last trial,
he substantially admitted so testifying. These statements, being
the admissions of a party to the record, are substantive evidence,
and go further than merely to the credit of the witness. And
yet such admissions alone would not warrant the finding that
there was nothing on this question to submit to the jury. But
the undisputed fact that he refused to accept a contract for the
substituted land upon the alleged representations, and only ac-
cepted it when Lalor agreed to buy the land, if he was dissatis-
fied, and that that contract by its terms afforded him full pro-
tection against any possible loss, if the land did not prove to be
as represented, leaves no room to doubt that he relied upon the
written and easily proved contract, and not upon mere verbal
representations preceding it, which had already proved ineffec-
tual to secure his acceptance of a contract for the second tract.
When he refused to accept this upon the representations as to
the quality and character of the land, and only did so upon
receiving a contract from Lalor that protected him against the
falsity of the representations, he cannot, we think, be heard to

say now that he did so, relying on the representations. In other words, he cannot now be heard to say that he relied on representations that, at the time, he in fact refused to rely upon. His testimony now as to his state of mind at the time is wholly inconsistent with the established facts that he then refused to act on the representations, and only acted upon obtaining a contract that, by its terms, protected him, in case he became dissatisfied for any reason. Where the testimony offered by a party upon whom rests the burden of proof is in conflict with undisputed facts, it is the duty of the court to direct a verdict. *Graham v. Chicago & N. W. R. Co.*, 143 Iowa 604; *McGlade v. City of Waterloo*, 178 Iowa 11; *Strader v. Armstrong*, 192 Iowa 1368; *Grohe v. Jackson*, 195 Iowa 705.

The fact remains undisputed after two trials that defendant, with knowledge of the fraud originally practiced upon him, and after he had given his notes directly to the bank, and when 2. APPEAL AND he had a right to fully protect himself by re-ERROR: directing scinding his contract, upon receiving a contract judgment in lower court. from Lalor that, according to its terms, insured him against loss, accepted other land. The defendant has twice attempted, upon different theories, and, we think, unavailingly, to avoid the plain and obvious effect of this. Under such circumstances we deem it our duty, not only to reverse, but to direct a judgment for plaintiff in the lower court. *McCarl v. Clarke County*, 167 Iowa 14; *Landis v. Interurban R. Co.*, 173 Iowa 466; *First Presbyterian Church v. Dennis*, 178 Iowa 1352; *Emery & Co. v. Wabash R. Co.*, 183 Iowa 687.

The judgment is reversed and the cause remanded, with direction to the court below to render judgment for plaintiff for the amount due on the notes.—*Reversed and remanded with direction.*

ARTHUR, C. J., and PRESTON, STEVENS, and DE GRAFF, JJ., concur.